IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL MORENO MORALES,

Petitioner

v.                                                                CIVIL 98-2337 (CCC)

UNITES STATES of AMERICA,

Respondent

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. PROCEDURAL BACKGROUND

This matter is before the court on motion of petitioner Rafael Moreno Morales to vacate sentence or set aside judgment under 28 U.S.C. § 2255. (Docket No. 3, filed November 30, 1998.) Petitioner was indicted on February 6, 1984 and subsequently convicted and sentenced to 30 years imprisonment for conspiring to obstruct justice in a criminal investigation, give false testimony and suborn perjury, in violation of 18 U.S.C. §§ 371, 1621 and 1623. The convictions were affirmed on appeal. United States v. Moreno Morales, 815 F.2d 725 (1st Cir.), cert. denied, 484 U.S. 966 (1987). On August 14, 1989, petitioner filed a motion under Rule 35, Federal Rules of Criminal Procedure, for review and reduction of sentence. The court denied this motion on August 31, 1989. Petitioner then filed his first habeas corpus petition *pro se* under 28 U.S.C. § 2255. The district court denied the petition and the denial was affirmed on appeal. Moreno Morales v. United States, 976 F.2d 724 (1st Cir. 1992) (unpublished opinion). He filed a second habeas corpus petition, with assistance of counsel,



CIVIL 98-2337 (CCC)                                      2

challenging the denial of parole by the Parole Commission. The district court denied his petition and the order denying the petition was affirmed on appeal. Moreno-Morales v. United States Parole Comm'n, 141 F.3d 1149 (1st Cir. 1998) (unpublished opinion).

Finally, petitioner filed the instant petition *pro se*. This being his third petition, the court dismissed it without prejudice. In November, 1998, petitioner received a certificate of appealability from the First Circuit. 28 U.S.C. § 2253(c). The Court of Appeals noted that the allegations revealed that a key prosecution witness recanted significant aspects of his trial testimony and charged that the government knowingly induced him to lie on the stand. The key evidence in support of the petition consists of the lengthy Senate documents for which English translations were not then available. Because of the nature and evidentiary posture of the claims, the court found that the circumstances were sufficiently unusual to "warrant a fuller exploration by the district court." Rodríguez v. Superintendent, Bay State Corr. Ctr., 139 F.3d 270, 272-73 (1st Cir. 1998). After re-filing his petition on November 30, 1998, petitioner then filed an amended and more comprehensive petition with the assistance of appointed counsel. (Docket No. 18, filed January 14, 2000.) This last petition claims that the government violated its obligation to provide him with favorable information as required under Brady v. Maryland, 373 U.S. 83 (1963), the seminal case providing for the prosecution's disclosure of material exculpatory evidence in its possession. The United States responded to the amended petition on February 22, 2000. (Docket No. 20.)

CIVIL 98-2337 (CCC)            3

Petitioner answered the response on May 16, 2001. The United States then filed a brief in response to the answer on June 7, 2001. (Docket No. 49.)

## II. FACTUAL BACKGROUND

Petitioner Miguel Cartagena Flores was one of three main witnesses whose testimony was used to convict petitioner and eight other police officers and members of the Intelligence Division of the Puerto Rico Police Department, the other witnesses being José Montáñez and Antonio Méndez. The charges stemmed from the investigation of the execution-style murder of two separatists, Arnaldo Darío Rosado and Carlos Soto Arriví, who were apparently going to sabotage a television transmission tower at Cerro Maravilla, located in the Toro Negro area of Puerto Rico. In 1996, the Senate of Puerto Rico conducted hearings investigating possible irregularities in the initial 1983 Senate investigation of the Cerro Maravilla executions of July 25, 1978, which in part lead to petitioner's indictment and conviction. Cartagena Flores' testimony at petitioner's trial indicated that he had witnessed Moreno Morales killing pro-independence activist Carlos Soto Arriví. Petitioner, however, was not charged with murder but rather with perjury, obstruction, conspiracy and suborning perjury for lying about and covering up the murders. Cartagena Flores' new Senate testimony states that he was not present at the murder scene and that the story he told was the version he had heard from others. He also explained that he testified as he did at petitioner's trial, responding to pressure by the federal prosecutor and his own attorney. Cartagena Flores says that under immunity, he failed the first, fifteen or sixteen polygraph examinations

CIVIL 98-2337 (CCC)                                4

he took. He claims that as soon as he lied and stated he saw the murders, he "surprisingly" passed the exam.

Petitioner alleges that the prosecution turned over only three polygraph examinations instead of the fifteen or sixteen. Petitioner claims that this evidence shows the pressure exerted on Cartagena Flores by his attorney and the prosecutors, and also shows that the prosecutors presented witnesses knowing that they were lying.

Petitioner also claims that Cartagena Flores denied being present at the murder scene during interviews conducted by Senate investigator Héctor Rivera Cruz. Petitioner contends that testimony of police officer Cartagena Flores before the Senate of Puerto Rico constitutes newly discovered evidence that shows Cartagena Flores committed perjury at petitioner's trial. Petitioner asserts that along with the recanted testimony, he discovered new evidence consisting of sworn statements given by Cartagena Flores to Senate investigator Héctor Rivera Cruz on October 3, November 7 and November 9, 1983 and statements of witness José Montáñez which appear in Rivera Cruz' notes. Petitioner also mentions inconsistencies between the trial testimony of Antonio Méndez and that of José Montáñez. Petitioner claims that as a result of this recanted testimony and newly discovered evidence, his conviction should be set aside and a new trial ordered. I address these issues.

### III. DISCUSSION

Section 2255 provides for post-conviction relief when (1) the sentence was imposed in violation of the Constitution or laws of the United States, or (2) the court

CIVIL 98-2337 (CCC)                                5

was without jurisdiction to impose such sentence, or (3) the sentence was in excess of the maximum authorized by law, and (4) the sentence is otherwise subject to collateral attack. See Hill v. United States, 368 U.S. 424, 426-27 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). Petitioner contends his sentence is subject to collateral attack because of newly discovered evidence and Brady violations.

A cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident. See David v. United States, 134 F.3d at 474 (citing Hill v. United States, 368 U.S. at 428). Petitioner moves the court to conduct an evidentiary hearing to determine if the evidence entitles him to have his conviction set aside and a new trial conducted. The First Circuit has developed a test to determine when the movant is entitled to an evidentiary hearing.

A "§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently-incredible.'" United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (citing Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)); see Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir.), cert. denied, 439 U.S. 834 (1978); see also Rule 4(b), Rules Governing Section 2255 Proceedings.

"[D]efendants bear the burden of establishing by a preponderance of the evidence that they are entitled to relief. ... This includes the burden of showing that they are

CIVIL 98-2337 (CCC)                                    6

entitled, if they claim it, to an evidentiary hearing." United States v. DiCarlo, 575 F.2d at 954 (citing Coon v. United States, 441 F.2d 279, 280 (5th Cir.), cert. denied, 404 U.S. 860 (1971)).

The alleged newly discovered evidence comes in two forms. The first are the statements and allegations that follow from Cartagena Flores' testimony before the Senate in December 1996, and the conclusion that the conviction was gotten by perjured testimony, with the knowledge of the prosecutors. The second form of evidence are the notes taken by Héctor Rivera Cruz in the initial investigation and which were disclosed to the public in March 1998 but never disclosed to the defendants at trial.

BRADY VIOLATION

It is bedrock law that

> suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Brady v. Maryland, 373 U.S. at 87; United States v. Cunan, 152 F.3d 29, 33  (1st Cir. 1998). The duty to disclose favorable evidence is not absolute.

> We do not ... automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict....' " Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting United States v. Keogh, 391 F.2d 138, 148 (2d Cir.1968)). Instead, "[a] finding of materiality of the evidence is required under Brady." Id.

CIVIL 98-2337 (CCC)                                    7

> In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court elaborated a test for determining when undisclosed evidence is material for purposes of a *Brady* inquiry. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.); *id.* at 685, 105 S.Ct. 3375 (White, J., concurring in part and concurring in judgment); *see also Kyles*, 514 U.S. at 433-435, 115 S.Ct. 1555 (endorsing *Bagley* test as the proper measure of materiality). This does not mean that a defendant must convince the court of the certainty of a different outcome. Instead, one proves a *Brady* violation "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555.

United States v. Cunan, 152 F.3d at 34.

"[A] prosecutor's duty to disclose exculpatory evidence extends beyond his or her personal knowledge of such evidence." McCambridge v. Hall, 266 F.3d 12, 21 (1st Cir. 2001); see Kyles v. Whitley, 514 U.S. 419, 437(1995).

NEWLY DISCOVERED EVIDENCE

A. ANTONIO MÉNDEZ

The challenge to Antonio Méndez' testimony because it is based on discrepancies and inconsistencies of testimony given at trial can hardly be given portent. Petitioner testified before the Senate committee in 1996, some days after Cartagena's testimony before the same body. He testified that he saw Soto Arriví and Darío Rosado alive on July 25, 1978. He admitted trying to hit one of the victims with a bag of cement but was prevented from doing so by another police officer. Petitioner asserts that the trial

CIVIL 98-2337 (CCC)                                                8

testimony of José Montáñez indicates that Antonio Méndez was with him when both victims were killed. Méndez reiterated before the Senate his trial testimony which indicated that petitioner shot and killed Carlos Soto Arriví. Petitioner maintains that since José Montáñez was not present at the time of the murders, Méndez could not have personal knowledge of those murders. (Answer to Government's Supplemental Response of May 16, 2001, at 2.) This claim should not be considered by the court, as such a challenge should have been raised at trial or on appeal, and because such information is not based on newly discovered evidence. Furthermore, the evidence at trial showed that part of the coverup was to conceal the presence of Montáñez at the shootings. United States v. Moreno Morales, 815 F.2d at 747-48; see United States v. Reverón Martínez, 836 F.2d 684, 690 (1st Cir. 1988). In any event, considering the trial testimonies of Montáñez and Méndez, including petitioner's own damning testimony, it would be impossible for a retrial to result in an acquittal. Petitioner's more recent Senate testimony clearly supports the perjury convictions.

B. JOSÉ MONTÁÑEZ' STATEMENTS TO SENATE INVESTIGATOR HÉCTOR RIVERA CRUZ

The statement of José Montáñez, one of the whistleblowers, is based on the discovery of Héctor Rivera Cruz' rough notes, which were released to the public along with the Senate's report on March 17, 1998. Respondent claims that petitioner is time-barred from raising José Montáñez' statements to Héctor Rivera Cruz because petitioner did not raise the issue until he filed his amended motion on January 14, 2000. Section

CIVIL 98-2337 (CCC)                                    9

2255 provides that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-- ... (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.A. § 2255. A review of the record shows that petitioner did raise the issue in his *pro se* motion of November 30, 1998. (Docket No. 3, at 17.) Therefore, petitioner has not exceeded the one-year statute of limitations for section 2255 claims as it applies to statements by José Montáñez to Héctor Rivera Cruz.

Petitioner alleges that recently discovered interview notes by Héctor Rivera Cruz show that José Montáñez had no knowledge of petitioner shooting at Soto Arriví. Petitioner asserts that this interview was conducted in the presence of United States Attorney López Romo. (Answer to Government's Supplemental Response of May 16, 2001, at 5-6.) Petitioner then charges the United States government with a duty to have revealed this impeaching testimony to the defense in compliance with <u>Brady</u>.

Petitioner has the burden of showing that the evidence he presents is "material and is not merely cumulative or impeaching." <u>Barrett v. United States</u>, 965 F.2d at 1195 (citing <u>United States v. Benavente-Gómez</u>, 921 F.2d 378, 382 (1st Cir. 1990)). This alleged newly discovered evidence would go to show that José Montáñez did not know who killed Soto Arriví and therefore lied during petitioner's trial. A review of the records shows that indeed the defense was aware of inconsistent statements by José Montáñez on previous occasions. Two of the defense attorneys confronted Mr. Montáñez about having lied in previous statements under oath. (Exhibit No. 26, at

CIVIL 98-2337 (CCC)                                    10

129-130, Docket No. 42, Government's Supplemental Response of March 19, 2001, at 132-134.) Montáñez admitted at trial having lied earlier. Thus, petitioner fails to carry his burden of showing that the newly discovered evidence is not "merely cumulative or impeaching" in nature. Barrett v. United States, 965 F.2d at 1195; United States v. Benavente-Gómez, 921 F.2d at 382. The substance of the statement that Mr. Montánez did not know who killed Carlos Soto Arriví and Darío Rosado is cumulative of previous statements by Montáñez in which he also denied knowledge of who performed the killings. Impeaching statements had been produced for defense counsel at trial. At the deposition in the civil lawsuit, Montáñez also denied being at Cerro Maravilla at the time of the killings. Therefore, José Montáñez' newly discovered statements are immaterial to petitioner's habeas corpus motion.

C. CARTAGENA FLORES' POLYGRAPH EXAMINATIONS

Petitioner claims that the content of Cartagena Flores' recanted testimony was discovered in December 1996. He filed his section 2255 petition based on newly discovered evidence on August 27, 1997 and re-filed on November 30, 1998 after receiving a certificate of appealability from the First Circuit.

The government contends that the defense was aware of the existence of the polygraphs and that he received the information pursuant to a court order. (Docket No. 42, Government's Supplemental Response of March 19, 2001, at 5-7.) They further contend that the defense's failure to seek compliance with the order indicates that they received the ordered discovery. Id. at 6. Respondent therefore argues that the one-year

CIVIL 98-2337 (CCC)                                  11

statute of limitations has run and petitioner is procedurally barred from raising the issue. Id. at 7.

Petitioner claims that the defense was entitled to have the results of all the polygraph examinations because they would show that Cartagena Flores changed his testimony after considerable pressure by the prosecutors. Presumably, the defense would have used this information to impeach Cartagena Flores at trial. However, petitioner does not explain why he did not seek the prosecution's compliance with the order to disclose the polygraph examinations. Indeed, the information available reflects that it was probable that the government complied fully with its Brady obligations, particularly after all of the attention given to the subject of polygraph results by the court. He only points to the fact that the sealed motion containing the polygraphs has disappeared from the court's records and to Miguel Cartagena's new testimony, testimony which the court may look at askance considering its source and late timing, alleging he was subjected to fifteen or sixteen polygraph examinations. He also claims that because the motion has disappeared from the records, the issue has not been resolved and therefore he is not precluded from litigating it. (Answer to Government's Supplemental Response of May 16, 2001, at 3-4.)

Petitioner was aware of the specific existence of polygraph examinations at trial. Indeed, on January 28, 1985, the United States had moved *in limine* to exclude evidence of the results of polygraph examinations. See, e.g., United States v. Winter, 663 F.2d 1120, 1150 (1st Cir.), cert. denied, 460 U.S. 1011 (1983). The trial court ordered the

CIVIL 98-2337 (CCC)                                    12

United States to disclose the names of witnesses to whom polygraph examinations were administered and surrounding information. To that effect, it issued a detailed order on February 5, 1985. When the government complied under seal, on February 19, 1985, the court admonished the government to make a more full disclosure of the polygraph information and witnesses. Finally, on February 28, 1985, the court ordered additional disclosure of material that might be exculpatory and was related to the polygraph examinations. The issue was framed precisely in Brady discovery terms. Petitioner knew that the examinations contained possible Brady material and successfully moved to have the government turn over these materials. At very least, petitioner had impeachment information in the form of the results of polygraph examinations reflecting deception and dated October 6 and 7, 1983. Because he was aware of their existence and failed to seek compliance with the court order or to raise the issue on appeal, petitioner is barred from raising the issue of polygraph examinations in his habeas corpus motion. "Section 2255 is not a surrogate for a direct appeal." David v. United States, 134 F.3d at 474; see also Hill v. United States, 368 U.S. at 426-427. In any event, the number of polygraph examinations becomes immaterial when one considers that petitioner had access to some and very probably all of the results of those examinations as a result of the trial court's order to produce, and that, at best, those results would have had impeachment value. In any event, there is no evidence at this juncture that the requirements of Brady v. Maryland were then violated. The claim requires even less attention if one considers that under the plain terms of the Anti-Terrorism and Effective

CIVIL 98-2337 (CCC)                                    13

Death Penalty Act, 28 U.S.C. § 2255, the limitations period has well expired. Finally, the record belies petitioner' ignorance related to the existence of a number of polygraph examinations. The evidence, were it to be produced again, or for the first time, would be cumulative. Indeed, if this additional evidence furnishes a basis to challenge a witness whose credibility has already been shown to be questionable (like have lied under oath in a grand jury as well as a civil trial and criminal trial), or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative. See United States v. Avellino, 136 F.3d 249, 257 (2nd Cir. 1998) (citing Giglio v. United States, 405 U.S. 150, 154 (1972); also see Zeigler v. Callahan, 659 F.2d 254, 266-67 (1st Cir. 1981). Evidence that is cumulative is not material. That being the case, such additional information would not trigger habeas relief.

D. CARTAGENA FLORES' RECANTED TESTIMONY

The corollary of petitioner's motion is Cartagena Flores' recanted testimony before the Senate of Puerto Rico. In this more recent Senate testimony, he states that, contrary to his declarations at trial, he did not see petitioner killing Carlos Soto Arriví because he (Cartagena Flores) was not present at the scene. It is well established that recantations are generally viewed with considerable skepticism. See United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989); Pelegrina v. United States, 601 F.2d 18, 21 (1st Cir. 1979); United States v. DiCarlo, 575 F.2d at 961; United States v. González-González, 106 F. Supp. 2d 269, 273 (D.P.R. 2000), aff'd, 258 F.3d 16 (1st Cir. 2001). Additionally, a finding of materiality is necessary for the section 2255

CIVIL 98-2337 (CCC)                                14

petition to be granted.  See Brady v. Maryland, 373 U.S. at 87.  The Supreme Court has determined that new evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985), remand sub nom. Bagley v. Lumkpin, 798 F.2d 1297 (9th Cir. 1986).

There were two other witnesses who corroborated petitioner's involvement in the killing and physical presence at the scene.  Antonio Méndez, a former second lieutenant in the Intelligence Division of the Police of Puerto Rico, testified that petitioner was among those surrounding the two victims at the time the shooting occurred.  United States v. Moreno Morales, 815 F.2d at 748.  José Montáñez testified before the grand jury on December 14, 1983 that petitioner admitted to shooting and killing Soto Arriví.  (Government's Exhibit 29, at 50.)  José Montáñez reiterated his grand jury testimony at petitioner's trial.  Petitioner has the burden of showing that the evidence he presents is "material and is not merely cumulative or impeaching."  Barrett v. United States, 965 F.2d at 1195 (citing United States v. Benavente-Gómez, 921 F.2d at 382.)  Petitioner's allegations essentially question the credibility of Cartagena Flores' testimony when he testified to being present at the time of the murders and observed petitioner killing Soto Arriví.  Therefore, Cartagena Flores' statements do not bear directly on petitioner's guilt or innocence, but instead constitute impeachment evidence against Cartagena Flores.  At a hearing held on a motion for new trial on August 26, 1998, in Superior Court,

CIVIL 98-2337 (CCC)                                    15

Cartagena Flores again recanted his trial testimony and states that he lied in relation to the facts on the prior occasion. It is appropriate to recall that at trial, Cartagena Flores was asked to revisit prior instances when he had testified falsely under oath. To put it mildly, there were many and they occurred before two different grand juries of this court, before two district attorneys, and in a deposition taken as part of a civil damage suit in this court. Furthermore, as respondent points out, at trial it was clear that the defense attorneys were aware of the prior inconsistent statements of the witness and did not cross-examine him. To allow resurrection of a non-issue based upon the tardy contrition of an again confessed liar, the court would have to reward a studied trial tactic with an unwarranted remedy. In any event, there was clearly no Brady violation and there is no requirement to hold an evidentiary hearing on this issue.

E.  CARTAGENA FLORES' STATEMENTS TO SENATE INVESTIGATOR HÉCTOR RIVERA CRUZ

Recently discovered rough notes written by Senate investigator Héctor Rivera Cruz show that Cartagena Flores indicated he was not present at the time of the murders. This evidence essentially repeats Cartagena Flores' recanted testimony. Thus, this evidence is also impeachment evidence and hence not material to innocence or guilt. Even more important, this evidence was not in the possession of the United States at the time of trial. Then United States Attorney Daniel López Romo attested on March 14, 2001 that he had not received copies of any notes made by Héctor Rivera Cruz, or the non-public, sworn witness statements made to the Senate investigators.

Specifically, he did not receive notes of Héctor Rivera Cruz regarding his interview of witness José Montáñez in November [8], 1983, at which Mr. López Romo was present. Nor did he receive a copy of notes of the December, 1983 interview of Cartagena by Héctor Rivera Cruz. A sworn statement dated March 8, 2001 of now Assistant United States Attorney Stephen P. Clark reflects that to his knowledge, the federal investigators did not have access to documents created or compiled by the Senate, except for public documents. With limited recollection due to the passage of time, he did not recall seeing any notes made by, or non-public, sworn witness statements made to, the Senate investigators. (Mr. Clark was a Trial Attorney, Criminal Section, Civil Rights Division, United States Department of Justice, at the time.)

PERJURED TESTIMONY

Petitioner argues that the recantation leads to the conclusion that the federal prosecutors knowingly used perjured testimony, particularly since the key witnesses lied about the essential event, stating that they had actually witnessed the killings when they arguably did not. Senate's Report Number 18 of January 30, 1997, presents Cartagena Flores' recanted testimony and it describes the testimony of other witnesses, including petitioner himself.

On December 4, 1996, Nelson González Pérez testified that he saw Moreno Morales remove the handgun from Rafael Torres' waist and fire it at victim Soto Arriví. See Senate's Resolution No. 18 of January 30, 1997, at 107. Rafael Torres Marrero on December 5, 1996, indicated before the Senate committee that petitioner removed a

CIVIL 98-2337 (CCC)                              17

weapon from the deponent's waist and proceeded to fire it at the victims in deponent's presence. Id. at 109. Also the testimony of Luis Reverón Martínez on December 9, 1996, reflects that he witnessed petitioner shoot Soto Arriví between two and four times. Id. at 113. Antonio Méndez Rivera testified on December 11 and 12, 1996 that he saw petitioner shoot Torres' weapon at Soto Arriví. Id. at 119. Finally, the report states that petitioner himself testified before the Senate on December 11, 1996 and he confessed to having killed Soto Arriví in much the same fashion that the other witnesses had described. Id. at 117. Certainly, these acts were not subject of indictment in this court but it is pellucidly clear that the intelligence division police officers had gone to great lengths to coverup the murders by lying at every opportunity. The proffered newly discovered testimony, whatever it may be, would probably not produce an acquittal.

At his own trial, petitioner had sufficient material with which to effectively attack the now ephemeral credibility of Cartagena. Even at trial, Cartagena admitted that he lied many times and did not tell the whole truth until November 17, 1983. Cartagena was not cross-examined by the experienced defense attorneys. Whatever reasons for the tactical decisions they may have made are unknown to the court. Perhaps the failure to cross-examine was due to the fact that the other co-defendants were all in the same division of the Police Department, and one of them was the brother-in-law of Cartagena, Rafael Torres Marrero. Considering the mass of testimonies before two federal grand juries between December 14, 1979 and November 18, 1983, Senate investigators, and depositions in a civil case between October 18, 1979 and April 2, 1980, and criminal

CIVIL 98-2337 (CCC)                    18

jury trials, it is clear that the United States did not knowingly present perjured testimony at trial. To the contrary, the United States presented witnesses it believed and, after extensive motion practice, produced from many sources impeaching information and evidence of prior inconsistent statements. Notwithstanding the comprehensive memoranda presented to the court by petitioner, it is difficult to conclude that the trial testimony was perjured. With the study in contradictions and evasion that are represented by the various testimonies relating to the occurrences at Cero Maravilla, it is impossible for the court to conclude that the testimony leading to the convictions was perjured. See United States v. Carbone, 880 F.2d at 1502; United States v. Bonilla, 503 F. Supp. 626, 629 (D.P.R. 1980). The court is in no position to conclude that the recanting reflects that the convictions were tainted by perjury. It is easier to conclude that the recanting is a study in convenient double talk. At the Senate, Cartagena said he lied in his November, 1983 sworn statement because he was told that he had not passed the numerous polygraphs. It is difficult to ignore the fact that this involuntary recantation occurred over ten years after the alleged lies. The "new" evidence can not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. at 435; see United States v. González-González, 258 F.3d 16, 20 (1st Cir. 2001).

## IV. CONCLUSION

In view of the above, I conclude that Cartagena Flores' testimony represents cumulative and impeachment evidence as it applies to all of petitioner's charges. I also

CIVIL 98-2337 (CCC)                                         19

find that introduction of this "newly discovered evidence" would not change the outcome in a new trial based on the latest Senate's report, which gave rise to the instant action.

In view of the above, I recommend that petitioner's motion brought under 28 U.S.C. § 2255 be DENIED without an evidentiary hearing.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

In San Juan, Puerto Rico, this 16th day of November 2001.

s/c: R. Moreno
     I. Valldejuli
     A. Gierbow
s/cs:to (2)
attys/pts
in ICMS
11/21/01

JUSTO ARENAS
United States Magistrate Judge